**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>LUCINA CONTRERAS VALENCIA, et al.,<br><br>  Defendants. | Case No.: 18-cv-0423 W (MSB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 16]** |

Pending before the Court is Plaintiff G&G Closed Circuit Events, LLC's motion for partial summary judgment. Plaintiff is seeking to establish liability against Defendants Lucina Contreras Valencia and El Tejate, Inc. under 47 U.S.C. § 605 and a state-law conversion count. Defendants oppose the motion.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's motion [Doc. 16].

1

## I. BACKGROUND

Plaintiff G&G Closed Circuit Events, LLC, is a closed-circuit distributor of sport and entertainment programming. (*Gagliardi Affidavit* [Doc. 16-4] ¶ 3.) G&G purchased the exclusive commercial exhibition licensing rights to *Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship Fight* (the "*Program*"), which was telecast nationwide on Saturday, September 16, 2017. (*Id.* ¶¶ 3, 4)

Defendant Lucina Contreras Valencia is the owner and an officer of Defendant El Tejate, Inc., which owns and operates El Tejate Restaurant (the "Restaurant"). (*Valencia Decl.* [Doc. 17-1] ¶ 2; *Riley Decl.* [Doc. 16-2] Ex. 2.) Defendants did not purchase a license from G&G to show the Program. (*Gagliardi Affidavit* ¶ 3; *Riley Decl.* Ex. 1 at 2:24–4:10.) Nevertheless, the Restaurant's televisions showed the Program through a SkyTv satellite account, which was paid for by the business. (*Valencia Decl.* ¶ 3; *Riley Decl.* Ex. 1 at 5:11–14.)

On February 23, 2018, G&G filed this lawsuit against Defendants. (*See Compl.* [Doc. 1].) The Complaint asserts four counts for: (1) Violation of 47 U.S.C. § 605; (2) Violation of 47 U.S.C § 553; (3) Conversion; and (4) Violation of California Business & Professions Code §§ 17200, *et seq*. G&G now moves for partial summary judgement on the first and third counts. Specifically, the G&G seeks summary adjudication "with respect to the liability of Defendants Contreras Valencia, individually and d/b/a El Tejate Restaurant or El Tejate, Inc.,… for Plaintiff's claims under 47 U.S.C. § 605 and for its conversion claim under California law…." (*Notice of Motion* [Doc. 16] 2:1–8.)

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

1  dispute about a material fact is genuine if "the evidence is such that a reasonable jury
2  could return a verdict for the nonmoving party." Id. at 248.

3       A party seeking summary judgment always bears the initial burden of establishing
4  the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving
5  party can satisfy this burden in two ways: (1) by presenting evidence that negates an
6  essential element of the nonmoving party's case; or (2) by demonstrating that the
7  nonmoving party failed to make a showing sufficient to establish an element essential to
8  that party's case on which that party will bear the burden of proof at trial. Id. at 322–23.
9  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary
10 judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630
11 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary
12 judgment must be denied and the court need not consider the nonmoving party's
13 evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

14      If the moving party meets this initial burden, the nonmoving party cannot avoid
15 summary judgment merely by demonstrating "that there is some metaphysical doubt as to
16 the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing
17 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton
18 Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477
19 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving
20 party's position is not sufficient."). Rather, the nonmoving party must "go beyond the
21 pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories,
22 and admissions on file,' designate 'specific facts showing that there is a genuine issue for
23 trial.'" Ford Motor Credit Co. v. Daugherty, 279 Fed. Appx. 500, 501 (9th Cir. 2008)
24 (citing Celotex, 477 U.S. at 324). Additionally, the court must view all inferences drawn
25 from the underlying facts in the light most favorable to the nonmoving party. See
26 Matsushita, 475 U.S. at 587.

3

## III. DISCUSSION

### A. Defendant El Tejate, Inc. is liable under 47 U.S.C. § 605 (a)[1]

G&G's motion seeks to establish that Defendant El Tejate, Inc., violated 47 U.S.C. § 605(a). This section provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). "Section 605 of the Communications Act prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). Although not originally intended to address television signal piracy, in the 1980's Congress "extended the statute's reach to the unauthorized reception or interception of television programming." Id. at 843. To establish liability under this section, a plaintiff must establish that the defendant "unlawfully intercepted, received, published, or divulged Plaintiff's privileged communication." J&& Sports Productions Inc. v. Rubio, 2017 WL 3234939 (Dist. AZ 2017) (citing 47 U.S.C. § 605).

---

[1] G&G's points and authorities also raise liability under section 553. However, the Notice of Motion states that liability is sought under section 605, and there is no mention of section 553. (*Notice of Motion* 2:1–8.) Additionally, G&G's reply seems to drop arguments related to liability under section 553. (*See Reply* [Doc. 19] 3:28–4:2 ("In light of the use of satellite technology, which is undisputed, this is a 47 U.S.C. § 605 case.")

4

Here, there is no dispute that G&G owned the exclusive commercial licensing rights to the Program. (*Gagliardi Affidavit* ¶¶ 3, 4.) There is also no dispute that none of the Defendants purchased a license from G&G to show the Program (*Gagliardi Affidavit* ¶ 3; *Riley Decl.* Ex. 1 at 2:24–4:10), and that the Program was "published" at the Restaurant (*Valencia Decl.* ¶ 3; *Riley Decl.* Ex. 1 at 5:11–14).

Defendants nevertheless argue that they did not violate section 605(a) because they "lawfully obtained [the Program] by a TV service provider who the business paid the subscription fee to for service, namely SkyTV," and therefore Defendants were not "unauthorized to receive the signal or display the programming." (*Opp'n* [Doc. 17] 4:6–8, 5:10–12, citing *Valencia Decl.* ¶ 3.) In support of this argument, Defendants cite two cases, J&J Sports Productions, Inc. v. Schmalz, 745 F.Supp.2d 844 (S.D. Ohio, 2010), and J&J Sports Productions, Inc. v. Mandell Family Ventures, LLC, 751 F.3d 346 (5th Cir. 2014).

But as G&G points out, Schmalz and Mandell involved liability under section 553, which differs from section 605. Section 553 provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, *unless specifically authorized to do so by a cable operator* or as may otherwise be specifically authorized by law.

47 U.S.C. § 553 (emphasis added). The emphasized language is a safe-harbor provision that "precludes the imposition of liability on the majority of cable recipients—customers of cable providers" by allowing the "cable operator" to "authorize" a person to receive the "communications service" (i.e., the Program). Mandell, 751 F.3d at 348. Relying on this safe-harbor provision, Schmalz and Mandell found the cable-customer defendants were not liable for violating section 553 because they were "authorized" by their cable providers to receive the programs. Schmalz, 745 F.Supp.2d at 851; Mandell, 751 F.3d at 348–350.

5

In contrast to section 553, section 605(a) allows only the communication's "sender"—not a "cable operator" or the satellite provider—to "authorize" the reception or display of a communication. Thus, under section 605(a), a person who mistakenly receives a communication from a satellite provider who is not also the "sender", is not shielded from liability for "publishing" the communication. For example, in <u>National Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 916 (6th Cir. 2001), the Sixth Circuit explained that because the cable provider was "not authorized [by the sender] to transmit the event to commercial establishments[,]" the cable provider's customer was not "authorized" within the meaning of the first sentence of section 605(a). <u>See</u> also <u>Garden City Boxing Club, Inc. v. Vinson</u>, 2003 WL 22077958 (N.D. TX 2003) (because DirecTV was not authorized to sell the pay-per-view fight to commercial establishments, defendant Red Dog Saloon violated section 605(a) by broadcasting the fight despite purchasing it from DirecTV); <u>J&J Sports Productions Inc. v. Rubio</u>, 2017 WL 3234939 (Dist. AZ 2017) (defendant violated section 605(a) despite legally receiving the signal from its satellite provider, SkyTV). Under this interpretation of the statute, Defendants' belief that they were authorized to receive and display the Program is irrelevant, which is consistent with the fact that section 605 is a strict-liability statute.

Because Defendants have provided no evidence indicating that G&G "authorized" Defendants or SkyTV to receive or publish the Program, El Tejate, Inc. is liable under section 605(a).

**B.     Defendant Valencia is liable for El Tejate, Inc.'s violation of § 605(a)**

Plaintiffs also seek to hold Valencia personally liable under section 605. To do so, Plaintiffs must show "that the corporate officer had a 'right and ability to supervise the violations, and that [he] had a strong financial interest in such activities.'" <u>J&J Sports Productions, Inc. v. Ribeiro</u>, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008).

Here, the California Secretary of State's Statement of Information lists Valencia as a corporate officer, director, owner and the agent for service of process for El Tejate, Inc.,

which owns and operates the Restaurant. (*Riley Decl.* Ex. 2; *Valencia Decl.* ¶ 2.) She is also listed as the owner of the Restaurant on the liquor license and on the City of Escondido Business License (*Riley Decl.* Exs. 4, 5.) These facts are sufficient to establish Valencia had the right and ability to supervise the violation, and a strong financial interest therein. See J&J Sports Productions, Inc. v. Mikhael, 2016 WL 2984191, *2 (C.D.Cal. 2016) (finding individual defendants liable because as "members" and registered agent of Vape Escape, LLC, they had "'a right and ability to supervise' the violation and a strong financial interest therein."). Accordingly, the Court finds Valencia is liable for the Restaurant's violation of section 605(a).

### C. **Conversion**

G&G also seeks summary adjudication that Defendants are liable for conversion. To prevail on a conversion count, G&G must establish the following elements:

> (1) plaintiff's ownership or right to possession of the property at the time of the conversion;
> (2) defendant's conversion of plaintiff's property by a wrongful act or disposition; and
> (3) damages.

Tyrone Pac. Intern., Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981). "Both the federal and state statutes recognize the property interest inherent in satellite broadcast transmissions and treat the unauthorized receipt of television signals as theft." DirecTV, Inc., 545 F.3d at 848 (citing 47 U.S.C. § 605(a) and Cal. Penal Code § 593d(a)).

As set forth above, there is no dispute G&G had the exclusive distribution rights to the Program, Defendants did not purchase a license to show the Program at the Restaurant, and that the Program was shown on the Restaurant's televisions. Additionally, Defendants do not dispute G&G's contention that it suffered damages as a result of Defendants' conduct. (*See Gagliardi Affidavit* ¶¶ 12, 19.) Accordingly, Defendants are liable to G&G for conversion of its Program.

7

## IV. CONCLUSION & ORDER

For the reasons discussed above, the Court **GRANTS** G&G's motion for partial summary judgment [Doc. 16] and finds Defendants Lucina Contreras Valencia and El Tejate, Inc., liable under count 1 (violation of 47 U.S.C. § 605) and count 3 (conversion).

**IT IS SO ORDERED.**

Dated: June 19, 2019

Hon. Thomas J. Whelan
United States District Judge